**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

CITY OF OSCEOLA, ARKANSAS                                      PLAINTIFF

v.                        **CASE NO. 3:13CV00011 BSM**

ENTERGY ARKANSAS, INC. et al.                               DEFENDANTS

<u>**ORDER**</u>

Defendants' motion for summary judgment [Doc. No. 33] is granted, and this case is dismissed with prejudice.

## I.  FACTUAL BACKGROUND

Viewing the record in the light most favorable to the City of Osceola ("Osceola"), the non-moving party, the facts are as follows.  Osceola is a municipality located in Mississippi County, Arkansas.  From January 18, 1983, to September 30, 2009, Osceola purchased wholesale electric power from Entergy Arkansas Inc. ("Entergy"), a subsidiary of the Entergy Corporation.  The details of the power service plan, and the parties' respective obligations, were contained within the Power Coordination, Interchange and Transmission Agreement (the "PCITA").  Entergy has several affiliates in the neighboring states of Mississippi, Louisiana, and Texas, who combine their generation resources as part of a larger power pool pursuant to the Entergy Systems Agreement.  The systems agreement is a wholesale rate tariff that is subject to the exclusive jurisdiction of the Federal Energy Regulatory Commission ("FERC").

In 2005, a number of operating companies in the power pool saw their production

costs greatly dip below those of their affiliates.   To correct this, FERC fashioned a "bandwidth remedy," that set a production cost band of +/- 11%.  Any operating companies whose production costs fell below the band would be compelled to make payments to any operating company whose production costs were above average.  From 2007 to 2009, the years at issue, Entergy was the only operating company that made such bandwidth payments.  As bandwidth payments were assessed against Entergy, it began to bill Osceola through the PCITA for a share of the payments.  The charges were billed to Osceola as "purchased energy under Account 555."  At the same time Entergy was billing Osceola for bandwidth payments, it was also collecting from other customers, including the Union Electric Company, which was being billed in exactly the same manner as Osceola.

In 2007, the operating companies filed a compliance action with FERC, which FERC submitted to an administrative law judge ("ALJ") for a full evidentiary hearing.  Osceola intervened in the proceeding, noting that it had a "direct interest" in the matter as it could be "impacted by any rate re-determinations" and was "not adequately represented by any other party."  *See* [Doc. No. 35-4].  While this was ongoing, Union Electric filed a separate FERC complaint against Entergy, arguing that Entergy could not pass on bandwidth costs as purchased energy.  Union Electric's complaint was held in abeyance, and Union Electric was permitted to raise its arguments before the ALJ in the compliance filing.  During that time, Osceola did not take any action or file a separate complaint of its own.

The ALJ found in favor of Entergy; however, Union Electric appealed to FERC,

which reversed the ALJ's ruling.  In its opinion, FERC held that while such bandwidth costs were allowed to be passed onto customers, Union Electric's agreement with Entergy did not permit those costs to be passed on to Union Electric.  *Entergy Servs., Inc.*, Opinion No. 505, 130 FERC ¶ 61,023 at P. 100 (2010).  FERC held that "the bandwidth payments cannot legitimately be characterized as a 'purchased energy expense charged to Account 555,' but instead are payments to roughly equalize production costs among the Operating Companies." *Id.* at P. 101.  FERC ordered Entergy to refund the bandwidth charges to Union Electric.  *See Entergy Servs. Inc.*, Opinion No. 505-A, 139 FERC ¶ 61103 at PP. 30–39 (2012).  Entergy subsequently filed a refund report with FERC, detailing the refunds it made to Union Electric.  Although the refund report did not provide for any refunds to Osceola, the city did not file any objections with FERC.  Afterwards, Osceola contacted Entergy and requested a refund of its bandwidth payments, but Entergy refused, arguing that the FERC order was specific to the Union Electric contract only.

Relying on the FERC opinion, Osceola filed suit against Entergy, claiming breach of contract for the period of 2007 to 2009 wherein Entergy assessed bandwidth charges against it.  Entergy moves for summary judgment, arguing that FERC has exclusive jurisdiction over this issue, that Osceola is barred by *res judicata*, and that Osceola previously agreed to dismiss all claims against Entergy in several settlement agreements.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material

fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute that must be resolved at trial. *Id.* Importantly, when considering a motion for summary judgment, all reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). Additionally, the evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

Entergy's motion for summary judgment is granted because Osceola's claim is barred by *res judicata*. The *res judicata* doctrine applies when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Hall v. Equity Nat. Life Ins. Co.*, 730 F. Supp. 2d 936, 943 (E.D. Ark. 2010). "*Res judicata* bars not only the re-litigation of claims which were actually litigated in the first suit, but also those which could have been litigated." *Id.* Additionally, collateral estoppel may apply to administrative agencies when such agencies acted in a judicial capacity. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*,

716 F.3d 1020, 1024 (8th Cir. 2013).

There is no doubt that the original action before FERC resulted in a final judgment on the merits, that FERC had proper jurisdiction, that both the FERC proceeding and this suit involve the same cause of action and the same parties. The relevant question, then, is whether Osceola's present claims are barred due to its failure to assert any claim or make any arguments during the FERC proceeding.

Osceola does not dispute that while it intervened in the FERC proceeding, it did not provide any testimony or make any arguments about why it should also be entitled to a refund if FERC ruled favorably for Union Electric. Instead, Osceola offers several justifications for its inaction. First, Osceola contends that the compliance proceeding in which it intervened was so limited in scope that the issue of its contract could not be properly considered. Second, Osceola argues that it was positioned differently than Union Electric, because Union Electric had a separate, pending complaint before FERC while Osceola did not. Third, Osceola claims that its claims were not even ripe until May 6, 2012, the day when FERC issued its final ruling. Finally, Osceola argues that it did not have "permission" from FERC to bring any other claims, that it is not bound by FERC's jurisdiction because it is a municipal utility company, and that since Union Electric's agreement with Entergy was identical to Osceola's, it simply "stood to reason that a favorable ruling for Union Electric . . . would apply uniformly to [Osceola]." Pl.'s Resp. [Doc. No. 47] at 23, 25–29.

Osceola's claims are barred by *res judicata* because nothing in the record supports

5

its contention that it was unable to address its claims at the FERC proceeding, and it cites no authority for its argument that it is not subject to FERC's exclusive jurisdiction due to its status as a municipal utility company.  The record indicates that Osceola intervened in the FERC proceeding to protect its interests, but sat by while Union Electric argued its case.  It also appears that Osceola failed to object to FERC when Entergy filed its refund report.  Osceola had several chances to raise these arguments at the FERC but elected not to do so, and it is inappropriate for it to now raise these arguments in this forum.

Additionally, even if *res judicata* does not bar its claims, Osceola's claims are barred because FERC has exclusive jurisdiction over the issues herein pursuant to the filed-rate doctrine.  Osceola styles its complaint as a breach of contract case, and seeks a judicial determination that adopts "the contract analysis of FERC in determining that Entergy's contract does not permit it to charge bandwidth payments."  Pl.'s Resp. [Doc. No. 47] at 13–14.  The Federal Power Act, however, provides FERC with the authority to ensure that "[a]ll rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of [FERC], and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable . . ." 16 U.S.C. § 824d(a).  FERC's jurisdiction over rate-related matters is encompassed in the filed-rate doctrine and courts cannot impose any rate other than the one approved by FERC.  *See Ark. La. Gas Co v. Hall*, 453 U.S. 571, 577-78 (1981).

In *Ark. La.*, the Louisiana Supreme Court assessed damages against a natural gas

producer when the gas company failed to honor a contractual "favored nations clause" that would have entitled the gas producers to charge higher rates. *Id.* at 573–76. On appeal to the United States Supreme Court, the gas producers argued that the Louisiana court did nothing more than "determine the damages they have suffered as a result of [the] breach of the contract." *Id.* at 579. The Court rejected this argument, stating that the authority to grant any retroactive rate increases was vested solely in FERC. *Id.* at 580. *See also AEP Texas North Co. v. Texas Indus. Energy Consumers*, 473 F.3d 581, 585–86 (5th Cir. 2006) (district court erred in attempting to interpret FERC-approved tariff in order to determine whether a violation had occurred because such judgment was reserved for FERC).

Entergy contends that Osceola's breach of contract claim is nothing more than an attempt to enforce a rate set by FERC. This is an overstatement, as Osceola is essentially requesting adoption of FERC's analysis in deciding the contract issue. Nonetheless, the decision as to whether the bandwidth charges were contractually permissible turns on an interpretation of the rates in Osceola's contract, something that is barred by the filed-rate doctrine. Although this is a somewhat unique situation, in that Osceola merely seeks to apply the reasoning of an existing FERC order, FERC's prior ruling is specific to Union Electric and Osceola has cited no precedent showing that the FERC's prior ruling permits it to circumvent the filed-rate doctrine.

## IV. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment [Doc. No.

7

33] is granted and plaintiff's case dismissed with prejudice.

IT IS SO ORDERED this 30th day of April 2014.

_____
UNITED STATES DISTRICT JUDGE